[Civ. No. 35300. First Dist., Div. Four. June 10, 1975.]

DAVID H. KATZ, Plaintiff and Appellant, v.
JOHN D. ROSEN, Defendant and Respondent.

**COUNSEL**

Leland C. Spiegelman for Plaintiff and Appellant.

Petris & Vasil and Nicholas C. Petris for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—David Katz appeals from a summary judgment dismissing his complaint for libel against John Rosen.

The declarations supporting and opposing the motion for summary judgment are not in factual conflict. Curtis Freund, an attorney, was retained by Madalyn Honig early in 1970 to represent her in a personal injury action. Freund hired Dr. John Rosen, the respondent herein, to perform a medical examination of Miss Honig and to write a report regarding the extent of her injuries. Respondent performed these services and charged $56 and $100 for the examination and report, respectively. Appellant was subsequently substituted as attorney for Miss Honig in the personal injury action. Appellant and Freund agreed that Freund was to receive one third of any attorney's fees received by appellant for his representation of Miss Honig; respondent's fees were to be paid by Miss Honig upon recovery in the personal injury action. Miss Honig's personal injury claim was settled in May 1972. While the $56 fee for the medical examination was promptly paid, Miss Honig asserted a right of setoff as to the $100 charged for the report, claiming that she had performed housekeeping services of equal value for respondent. Respondent denied that Miss Honig had rendered any services to him, and sought the assistance of the San Francisco Bar Association to induce appellant to pay. He at first rejected a recommendation by a member of the San Francisco Bar Association's Medical-Legal Subcommittee to settle his claim for $50.

Appellant then exerted pressure on Freund to bring about a settlement between Miss Honig and respondent. While admitting that Freund was entitled to the agreed share of attorney's fees, appellant repeatedly refused to remit as long as Freund was unable to persuade respondent to accept a compromise. Freund explained his predicament to respondent. Out of consideration for Freund, respondent reluctantly agreed to the compromise which had been proposed. He thereafter wrote the following letter to the San Francisco Bar Association complaining of appellant's conduct:

"August 23, 1972

"San Francisco Bar Association
222 Montgomery
San Francisco, California

"Gentlemen:

"I am writing this letter as a result of a most perturbing situation which arose recently, and I hope you may be able to offer some guidance. In brief, at the request of an attorney acquaintance of mine, Curtis A. Freund, I examined a patient, Miss Madelyn Honig, in connection with injuries received in a 1968 automobile accident. My fee for the examination was paid, but Mr. Freund asked me to wait for payment for the medical report until settlement of the case. I agreed, although it is not my usual practice. My fee for the medical report was $100.00.

"Subsequently, Mr. David H. Katz, a San Francisco attorney, took over the case from Mr. Freund with an arrangement for payment on settlement to Mr. Freund for services rendered to that time. The case was settled a few months ago, but I was informed by Mr. Freund that Mr. Katz would not pay him his agreed fee unless I reduced my charge for the medical report to $50.00. I contacted the Bar Association at that time, and was advised by Miss Ollie Marie-Victoire that my fee was reasonable and should not be reduced under the circumstances. Mr. Freund fully concurred in this.

"Nonetheless, Mr. Katz persisted in refusing to pay either me or Mr. Freund our fees unless I reduced mine by half. With great reluctance, and due to the pressures of time and my wish to be considerate of Mr. Freund, I agreed to the reduction. I then received my fee, and I understand Mr. Freund received his, more than three months after Mr. Katz had been paid.

"I am most resentful of the kind of pressure to which I have been subjected in this matter. My fee for the medical report was incurred three years ago, and no objection to it had been stated for that entire time. I feel it was reasonable and completely justified under the circumstances, and agreed to reduce it only because Mr. Freund's fee would not be paid otherwise. In other words, I feel I was 'held up' to avoid payment of a legitimate bill to which I was fully entitled.

"I consider this conduct on the part of Mr. Katz to be shabby and unethical, and far afield from the standards of your profession I have expected and experienced in the past. If I am wrong in this, I would appreciate knowing why. In any case, I would very much like a considered response from you.

"Sincerely yours,

"John D. Rosen, M.D.

"JDR/dc

"cc. Mr. David H. Katz
   Mr. Curtis A. Freund"

Appellant's complaint alleged that the letter was libelous. ██ Charges of unethical conduct against an attorney may constitute actionable defamation (see *Locke* v. *Mitchell* (1936) 7 Cal.2d 599 [61 P.2d 922]; Annot. (1943) 144 A.L.R. 814). Respondent claims that even if potentially libelous the statements were absolutely privileged under Civil Code section 47, subdivision 2, which provides that a publication made in a judicial proceeding or any other official proceeding authorized by law is privileged. The privilege conferred by the section is absolute and unaffected by the presence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Frisk* v. *Merrihew* (1974) 42 Cal.App.3d 319, 323 [116 Cal.Rptr. 781].) The absolute privilege extends to quasi-judicial as well as judicial proceedings. (*Ascherman* v. *Natanson, supra,* at p. 865.)

Informal complaints received by a bar association which is empowered by law to initiate disciplinary procedures are as privileged as statements made during the course of formal disciplinary proceedings. (*Ramstead* v. *Morgan* (1959) 219 Ore. 383 [347 P.2d 594, 77 A.L.R.2d

481]; see cases in annot. 77 A.L.R.2d 493.) Prior to the enactment of the state bar act in 1927 (see Stats. 1927, ch. 34, § 1 et seq., pp. 38-45), local bar associations in California were empowered to institute disciplinary action against their members. (See Stats. 1921, ch. 107, § 3, p. 100; *In re Morganstern* (1923) 61 Cal.App. 702, 705-707 [215 P. 721]; *Bar Association of San Francisco* v. *Cantrell* (1920) 49 Cal.App. 468 [193 P. 598].) Under present law, however, disciplinary proceedings may only be brought by the Board of Governors of the State Bar or any local administrative committees which the board may create. (See Bus. & Prof. Code, §§ 6040, 6043-6044, 6077; *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 298 [113 Cal.Rptr. 113].) The San Francisco Bar Association is not a local administrative committee empowered by the State Bar to investigate complaints. On the contrary, local bar associations are powerless to impose legal sanctions against ethical abuses. (See 36 State Bar J. (1961) 306.) Thus, a complaint to a local bar association is not a step toward quasi-judicial action. No absolute privilege attaches to a letter addressed to the San Francisco Bar Association.

█ Respondent's letter is nevertheless protected by a qualified privilege. Civil Code section 47 provides: "A privileged publication or broadcast is one made— . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." As one who felt aggrieved by the conduct of a member of the San Francisco Bar Association, respondent was a party interested in the subject matter of the communication. The bar association was also an interested party within the meaning of the statute since the association's medical-legal subcommittee assists doctors and lawyers to resolve their differences. █ When a prima facie case for qualified privilege is set forth, the plaintiff must allege facts showing that malice existed at the time the communication was published. (*Locke* v. *Mitchell, supra,* 7 Cal.2d 599, 603.) The degree of malice required to vitiate a claim of qualified privilege is "a feeling of hatred or ill will going beyond that which the occasion for the communication apparently justified . . ." (*Smith* v. *Hatch* (1969) 271 Cal.App.2d 39, 47 [76 Cal.Rptr. 350]; see also *Dietrich* v. *Litton Industries, Inc.* (1970) 12 Cal.App.3d 704, 714 [90 Cal.Rptr. 856].) █ There was no showing that respondent's statements were motivated by spite or ill will. The factual statements in the letter are concededly true. Respondent's sole apparent purpose in communicating with the bar association was to seek redress for what he believed to be unethical conduct on appellant's part. None of this was

contradicted in appellant's declarations. Thus, no issue of fact remained for trial as to the existence of malice. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 173, p. 2825.)

The judgment is affirmed. It appears to this court that the appeal was frivolous. Pursuant to the provisions of rule 26(a), California Rules of Court, the court determines that it is just to add damages in the amount of $100 in addition to the normal costs to be recovered by respondent, and it is so ordered.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied June 30, 1975, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1975.

---

*Retired judge of the superior court sitting under appointment by the Chairman of the Judicial Council.