LARRY HOMERIN, Plaintiff-Appellant, v. MID-ILLINOIS NEWSPAPERS, d/b/a Pekin Daily Times, Defendant-Appellee.

Third District   No. 3—92—0642

Opinion filed May 19, 1993.

Burt L. Dancey, of Elliff, Keyser, Oberle & Davies, P.C., of Pekin (William P. Streeter, of counsel), for appellant.

Frederick A. Bernardi, of Pekin, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Larry Homerin, former mayor of the City of Pekin, filed this libel action in the circuit court of Tazewell County seeking damages against defendant, Mid-Illinois Newspapers, doing business as Pekin Daily Times. The circuit court granted defendant's motion to dismiss on the basis of the "modified innocent construction" rule. We affirm.

On April 13, 1990, defendant published a political cartoon depicting a grinning, white male character wearing glasses and a cowboy-type hat. The character was holding a bag with the initials of "FBOP" and five dollar signs ($) on the front of the bag. Around the head of the character appeared the words "CROCODILE DONE-DEAL."

Plaintiff filed a complaint against defendant alleging that defendant acted with actual malice and intended to injure plaintiff's good name and reputation by publishing the cartoon. Plaintiff claimed that the cartoon communicated a lack of integrity on his part in the discharge of his duties as the mayor of Pekin and as a member of city council. Plaintiff alleged that the cartoon suggested that his decisions as a public official were done for personal gain and profit, and that he received money from the Federal Bureau of Prisons. At the time the cartoon was published, the issue of whether a Federal prison site could be located in Pekin was before the city council. Plaintiff claimed that the publication was false and prayed for compensatory and punitive damages.

Defendant moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) Defendant raised the following arguments to support the motion to dismiss: that the cartoon was constitutionally protected speech under the first amendment of the United States Constitution; that the cartoon could not be considered defamatory *per se* because it did not name or identify the plaintiff, and because it was necessary to provide extrinsic facts to establish the alleged defamatory meaning; that the cartoon was susceptible to a reasonable innocent interpretation; that the complaint failed to allege actual malice; and that the complaint could not form the basis of an action *per quod* because plaintiff failed to adequately plead special damages.

The circuit court granted defendant's motion dismissing plaintiff's complaint, but allowed plaintiff 28 days to replead. The court's order, in relevant part, provided: "The Court finds that the publication is reasonably susceptible to an innocent construction and in addition, the

Court finds that the complaint fails to allege special damages with particularity to sustain a *per quod* action."

Plaintiff moved for reconsideration and clarification of the order. The circuit court issued a second order finding that plaintiff's complaint had established actual malice, but reaffirmed its prior order in all other respects. The court gave plaintiff 14 days to amend his complaint; if he did not amend, the order would become final and appealable. Plaintiff chose to appeal the order as of right.

The sole issue for review is whether the circuit court erred in dismissing plaintiff's complaint based on its finding that the cartoon was susceptible to a reasonable innocent interpretation.

A statement is considered to be defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 10, 607 N.E.2d 201.) Defamatory statements may be classified as being defamatory *per se* or *per quod*. *Per se* statements occur when the defamatory character is apparent on its face, and are typically within one of four classifications: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability in his trade, profession or business. (*Kolegas*, 154 Ill. 2d at 10.) *Per se* statements are so obvious and materially harmful to the plaintiff that injury to his or her reputation may be presumed. *Kolegas*, 154 Ill. 2d at 10.

*Per quod* statements, on the other hand, are not defamatory on their face and require extrinsic facts to explain their defamatory meaning. (*Kolegas*, 154 Ill. 2d at 10.) In the instant case, plaintiff waived any claims of error as to his *per quod* theory when he chose not to amend his complaint. He appealed the circuit court's order on the basis that the court erred in applying the modified innocent construction rule to his theory of defamation *per se*. The modified innocent construction rule applies only to defamation *per se*. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 232-33, 552 N.E.2d 973.) As such, this court's discussion will be limited to a determination of whether the circuit court erred in its application of the modified innocent construction rule.

The modified innocent construction rule was announced in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195.

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natu-

ral and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. (*Chapski*, 92 Ill. 2d at 352.) Whether a statement is reasonably susceptible to an innocent construction is question of law to be decided by the trial court. (*Kolegas*, 154 Ill. 2d at 11.) The trial court, in determining whether the statement is defamatory, is required to focus on the predictable effect the statement had upon those who received the publication. *Colson v. Stieg* (1982), 89 Ill. 2d 205, 212, 433 N.E.2d 205.

In the instant case, the cartoon at issue was found by the circuit court not to be defamatory *per se* under the modified innocent construction rule. There are two avenues of defense under the rule. The first is whether the cartoon could "reasonably be interpreted as referring to someone other than the plaintiff." (*Chapski*, 92 Ill. 2d at 352.) The second is where "the statement may reasonably be innocently interpreted." *Chapski*, 92 Ill. 2d at 352.

The circuit court did not expressly state under which part of the rule the cartoon could be innocently construed. Under either part of the rule, we would affirm. First, the cartoon does not identify plaintiff by name. Even if his likeness could be reasonably interpreted as being depicted in the cartoon, his complaint is fatally flawed for failing to allege that the readers of the publication reasonably understood the cartoon to refer to him. *Archibald v. Belleville New Democrat* (1964), 54 Ill. App. 2d 38, 42, 203 N.E.2d 281; see *Schaffer v. Zekman* (1990), 196 Ill. App. 3d 727, 732, 554 N.E.2d 988 (plaintiff's allegation that publication at issue was "of and concerning" defendant was conclusory and, therefore, insufficient to support a claim of defamation *per se*).

In addition, we find that the cartoon is susceptible to a reasonable innocent interpretation. Defendant suggests that the cartoon could be construed as meaning that plaintiff was successful in bringing the Federal Bureau of Prison's money to the Pekin area. We agree that this is a reasonable innocent construction of the cartoon and gives the cartoon a nondefamatory meaning.

The circuit court's decision to dismiss plaintiff's complaint is affirmed.

Affirmed.

BRESLIN and STOUDER, JJ., concur.